**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (California Bar No. 295032)
Brittany S. Scott (California Bar No. 327132)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com
E-Mail: brittany@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (California Bar No. 244902)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LACEY TIMMINS, on Behalf of Herself and all Others Similarly Situated,<br><br>      Plaintiff,<br>  v.<br><br>WALMART, INC.,<br><br>      Defendant. | Case No. 2:24-CV-02960-DJC-JDP<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP

## NATURE OF THE CASE

1. This class action aims to hold Defendant Walmart Inc. responsible for failing to truthfully and accurately label and market its skin care products.

2. Allergic contact dermatitis is the fifth most prevalent skin disease in the U.S., exceeding $1.5 billion in direct annual medical costs. Between 1996 and 2016, the prevalence of dermatitis caused by personal care products increased by almost 300%. As a result, consumers increasingly seek out and rely on terms like "hypoallergenic" when making purchasing decisions about skin care products, especially when shopping for children with skin sensitivities and conditions like eczema.

3. This case involves Defendant's widespread, deceptive use of the term "hypoallergenic" in its misleading labels and marketing materials, such as in Walmart's Parent's Choice brand Baby Petroleum Jelly Skin Protectant (the "Product"). The Product's front label prominently represents to consumers that the Product is "Hypoallergenic." On Defendant's website, in addition to the representation that the Product is "hypoallergenic" Defendant also claims the Product "works as a skin protectant," "protects tender skin," "helps treat and prevent diaper rash," and "helps protect chafed skin."

4. However, these representations are false. The truth is the Product is not hypoallergenic because it contains fragrance chemicals. Fragrance is one of the most common allergens and skin irritants, and a leading cause of allergic contact dermatitis according to the American Academy of Dermatology ("AAD"). Indeed, the AAD estimates about 2.5 million Americans have fragrance allergies.

5. By deceiving consumers about the nature, quality, and/or ingredients of its Product, Defendant is able to take away market share from competing products and increase its own sales and profits. Consumers lack the ability to test or independently ascertain the potential for allergic contact dermatitis at the point of sale. Reasonable consumers must and do rely on Defendant and its competitors to honestly report the

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP

1

nature of the product and its ingredients. The term "hypoallergenic" communicates to reasonable consumers that a product is specifically formulated to minimize the risk of allergic reactions and is free from common allergens. Defendant's inclusion of fragrance ingredients directly contradicts this claim.

6.    Plaintiff brings this action individually and on behalf of similarly situated consumers who purchased the Product that was falsely and misleadingly labeled and marketed as "hypoallergenic." Plaintiff seeks to represent a putative nationwide class, a California subclass, and multi-state classes seeking damages, interest thereon, reasonable attorney fees and costs, restitution, equitable relief, and disgorgement of all benefits Defendant has enjoyed from its unlawful and deceptive business practices, as detailed herein. In addition, Plaintiff seeks injunctive relief to stop Defendant's unlawful conduct in the labeling and marketing of the Product. Plaintiff makes these allegations based on her personal knowledge as to herself and her own acts and observations and, otherwise, on information and belief based on investigation of counsel.

**PARTIES**

7.    Plaintiff Lacey Timmins is domiciled in California. Plaintiff purchased the Product in October or November 2022 at a Walmart supermarket in Patterson, Stanislaus County, California. Plaintiff purchased the product because her son had eczema and diaper rash and she believed the Product would help treat her son's skin and alleviate symptoms. The Product did not help treat her son's skin or alleviate his symptoms, however, and in fact prolonged them.

8.    Plaintiff reviewed and relied on the Product's packaging before buying it, including the representation that the Product was "Hypoallergenic."

9.    If Plaintiff had known the Product was falsely labeled and was not in fact hypoallergenic, Plaintiff would not have bought it or would have paid less. Plaintiff learned the Product was not in fact hypoallergenic because it contained fragrance on or around September 12, 2024.

10.     Plaintiff remains interested in purchasing similar healing jelly products that are truly hypoallergenic. However, she cannot know for certain whether the false labeling of the Product has been or will be corrected. The composition of the Product may change over time, but if Defendant continues to make the representations at issue here, then, when presented with false or misleading information while shopping, Plaintiff will be unable to make informed decisions about whether to purchase the Product. Plaintiff is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Product's marketing is accurate and no longer has the tendency or capacity to deceive or confuse reasonable consumers.

11.     Defendant Walmart Inc. is a Delaware corporation with its principal place of business in Little Rock, Arkansas. Defendant manufactures, advertises, distributes, and sells the Product under its in-house brand, Parent's Choice, both online at sites like www.walmart.com and www.amazon.com, and at brick-and-mortar Walmart locations throughout the United States. The Product includes the Parent's Choice logo and name. Defendant is responsible for the labeling of the Product, and its formulation.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from Defendant.

13.     This Court has personal jurisdiction over Defendant because Defendant's contacts with the forum are continuous and substantial, and Defendant otherwise intentionally availed itself of the laws of this State through the marketing of the Product at issue in California to consumers in California and through direct sales of the Product in California to consumers in California, so as to render the exercise of jurisdiction by this

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                          3

Court consistent with traditional notions of fair play and substantial justice. A substantial portion of the events giving rise to the claims alleged here occurred in this State.

14.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and because Defendant engages in continuous and systematic business activities within this District.

## FACTUAL ALLEGATIONS

15.    A significant portion of the U.S. population has allergies that are triggered by skin care products. Allergic contact dermatitis is the fifth most prevalent skin disease in the U.S.[1] Personal care products such as soaps, lotions, and fragrances frequently contain ingredients that may cause allergic contact dermatitis. The prevalence of dermatitis related to personal care products increased by almost 300% between 1996 and 2016.

16.    Over the last decade, retail chains such as supermarkets have become the most prolific manufacturers, marketers, and distributors of so-called "natural," "clean," and "hypoallergenic" personal care products, accounting for just over 40% of world-wide revenue in 2019. However, the U.S. Food and Drug Administration ("FDA") has not defined or regulated the terms "natural," "clean," or "hypoallergenic," resulting in sellers freely advertising with these terms to imply safety and health benefits to unsuspecting consumers.

17.    Given the increased prevalence of allergic contact dermatitis and other skin conditions, there is no question consumers increasingly seek the presence of such terms on product labels when shopping for themselves and their children. Those who do not already suffer from skin allergies seek hypoallergenic products to avoid developing skin allergies. Those who do suffer from skin allergies, or with children who suffer from skin

---

[1] Young PA, Gui H, Bae GH. Prevalence of Contact Allergens in Natural Skin Care Products From US Commercial Retailers. *JAMA Dermatol.* 2022;158(11):1323–1325. doi:10.1001/jamadermatol.2022.3180, https://jamanetwork.com/journals/jamadermatology/fullarticle/2795927

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                                                    4

allergies, seek hypoallergenic products to avoid unknown and/or hidden allergens that will exacerbate or prolong their conditions.

18.    Vulnerable consumers, such as parents of children with skin sensitivities and individuals with histories of allergic reactions, are thus subject to exploitation by manufacturers of these products. The Product is frequently purchased by consumers whose newborn and young children suffer from eczema and diaper rash. Consumers are willing to pay more for products labeled "hypoallergenic," operating under the reasonable but false assumption that the products have undergone rigorous testing or meet specific safety standards. In reality, so-called "hypoallergenic" products may contain the same potential allergens as their standard counterparts, or may simply have replaced common allergens with less-studied ingredients that pose their own risks.

19.    Defendant manufactures, markets, and sells the Product both online and at its brick-and-mortar locations.

20.    The Product's front label prominently represents to consumers that the Product is "Hypoallergenic."



21.    Merriam-Webster defines "hypoallergenic" as "having little likelihood of causing an allergic reaction," while Dictionary.com defines the term as "designed to reduce or minimize the possibility of an allergic response . . . ."

22.    On its website and the website of other retailers that sell the Product, Defendant advertises the Product as "Hypoallergenic" and claims the Product "works as a skin protectant," "protects tender skin," "helps treat and prevent diaper rash," and "helps protect chafed skin." *See* Exhibit A. These representations reinforce the "Hypoallergenic" statement on the front label.

23.    On the Product's back label, hidden in small print on the lower right side of the panel that reasonable consumers are not likely to notice, Defendant lists fragrance as an inactive ingredient. Plaintiff has added the red arrow for reference below.



24. Therefore, Defendant's front label representations are false and misleading. Contrary to Defendant's material representations, the Product is not hypoallergenic if it contains fragrance.

25. Fragrance is one of the most common allergens and skin irritants, and a leading cause of allergic contact dermatitis according to the American Academy of Dermatology ("AAD"). The AAD estimates about 2.5 million Americans have fragrance allergies.

26. "Fragrance" in personal care products, cosmetics, and cleaning products can and usually does refer to some combination of more than 3,000 different chemical compounds.

27. The risk of contact dermatitis from fragrance chemicals increases for those with compromised skin barriers. For individuals with sensitive skin or conditions like eczema, rosacea, or psoriasis, the use of fragranced products can be particularly problematic, exacerbating these conditions over time.

28. Even when there is no visible redness or rashes after using a product with fragrance chemicals, there may be inflammation at the cellular level and long-term consequences if use is prolonged. With repeated exposure over time, even individuals who initially tolerate fragranced products may develop allergies or sensitivities, sometimes leading to chronic skin issues.

29. The role of fragrance in skin care products is limited to aesthetic appeal and masking the natural scent of active ingredients. In other words, fragrance chemicals serve no essential purpose and do not contribute to the efficacy of skin care products in treating or alleviating skin issues.

30. With respect to the Product, Defendant knew that one of the most important, material label representations to consumers is the statement that the Product is "hypoallergenic." Defendant made this prominent statement with knowledge that it is false and/or misleading to reasonable consumers. By deceiving consumers about the nature,

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                              7

quality, and/or ingredients of its Product, Defendant is able to take away market share from competing products and command a price premium, thereby increasing its own sales and profits.

31.    Consumers lack the ability to test or independently ascertain the potential for allergic contact dermatitis at the point of sale. Reasonable consumers must and do rely on Defendant to honestly report the nature of the Product and its ingredients. The term "hypoallergenic" communicates to reasonable consumers that a product is specifically formulated to minimize the risk of allergic reactions and is free from common allergens. Defendant's inclusion of fragrance ingredients directly contradicts this claim.

32.    Because even a minute amount of a chemical allergen such as fragrance is enough to cause a full-blown allergic response, consumers reasonably expect and believe that when a product is labeled as "hypoallergenic" this representation is true not just as to the active ingredients, but as to every ingredient in the product.

33.    Defendant intended for consumers to rely on its representations, and hundreds of thousands of consumers did in fact so rely. As a result of its false and misleading labeling and marketing, Defendant was able to sell the Product to hundreds of thousands of consumers throughout the United States and to profit handsomely from these transactions.

34.    Defendant's deceptive packaging and marketing at issue here was consistent during the last four years.

35.    Notably, the "Hypoallergenic" statements are not disclaimed or modified anywhere on the Product's labels. No asterisk or marking appears by the word "Hypoallergenic" that would suggest to a reasonable consumer that they need to look elsewhere on the label to understand the true meaning. Because the "Hypoallergenic" statement appears effectively as one of the main claims on the front of the label of the Product, reasonable consumers interpret it at face value: that the Product is literally

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                    8

designed to avoid triggering an allergic reaction and contains no ingredients which are known, common allergens.

36.    Defendant deceptively and misleadingly conceals other material facts about the Product, including: (a) the true nature of the Product's ingredients; (b) that the Product contains chemicals commonly known to be allergens, sensitizers, and/or irritants; (c) that the Product is not "hypoallergenic" and not what reasonable consumers would consider "hypoallergenic"; and (d) that the Product contains chemicals that a reasonable consumer would not expect in a product labeled "hypoallergenic."

37.    To this day Defendant continues to conceal and suppress the existence, identity, nature, and concentration of fragrance chemicals in the Product.

38.    Similarly, to this day, Defendant continues to conceal and suppress the fact that the Product is not "hypoallergenic" as promised.

39.    Plaintiff contends that her son's eczema and diaper rash were not alleviated and were prolonged by the use of the Product.

40.    Plaintiff also contends that had she known the Product contained known, common allergens such as fragrance, she would not have purchased the Product, or would have paid less for it and/or purchased the Product on different terms.

41.    Based on Defendant's representations and marketing materials, Plaintiff and reasonable consumers would not expect that the Product would contain known, common allergens such as fragrance.

42.    Plaintiff purchased the Product to her detriment, as did members of the putative classes.

43.    Plaintiff purchased the Product for personal and family use, including for use on her newborn son's sensitive skin.

44.    The price paid by Plaintiff was representative of the price paid by similarly situated consumers who purchased the Product.

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                                      9

45.    The representations on the Product purchased by Plaintiff were the same as the representations purchased by members of the putative classes.

46.    Acting reasonably under the circumstances, Plaintiff relied on Defendant's representations for the truth of the matter stated.

47.    It is possible that Plaintiff would purchase the Product in the future if the representations were truthful, as Plaintiff continues to buy similar products within the marketplace.

48.    On information and belief, Defendant intentionally included the prominent "Hypoallergenic" statement on the front label of the Product to induce purchases and increase sales.

49.    Manufacturers charge a price premium for products that are labeled as natural or hypoallergenic. Defendant intentionally included the "Hypoallergenic" representation on the Product's label and in marketing materials to increase sales and/or charge a premium for the Product.

50.    Defendant knew or should have known that reasonable consumers would consider the representations material in deciding to purchase the Product.

51.    Defendant knew or should have known that the representations could plausibly deceive reasonable consumers into believing that the Product is hypoallergenic and contains no known, common allergens.

52.    Reasonable consumers ascribe a common meaning to words on product labels.

53.    Reasonable consumers rely on product labels for their truth and accuracy.

54.    Reasonable consumers are not required to conduct independent research to determine the truth of label statements.

55.    Reasonable consumers are not expected to look beyond misleading representations on the front label of a product or in marketing materials to determine whether they are false.

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                    10

56. Instead, it is the responsibility of product manufacturers to accurately label their products in a manner that is not misleading.

57. Even a perfectly true statement that is couched in a manner that is likely to mislead or deceive consumers is actionable.

58. Plaintiff and reasonable consumers reasonably believed that the prominent front label statement that the Product is hypoallergenic was true.

59. As described herein, Defendant's representations are literally false.

60. Accordingly, there is no "common sense" interpretation of the representations that would overcome their falsity.

61. At the time Plaintiff and reasonable consumers purchased the Product, Plaintiff and consumers did not know, and had no reason to know, that the representations were misleading, deceptive, and unlawful. Plaintiff and consumers would not have purchased the Product, or would have purchased it on different terms, if they had known the truth.

62. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and putative class members in that they: (a) paid a sum of money for a product that was not as represented; (b) paid a premium price for a product that was not as represented; (c) were deprived the benefit of the bargain because the Product they purchased was different from what Defendant warranted; (d) were deprived the benefit of the bargain because the Product had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendant; (f) used (or caused their children to use) a product that Plaintiff and the members of the classes did not expect or consent to; (g) used (or caused their children to use) a product that was not hypoallergenic; (h) without their knowing consent, used (or caused their children to use) a substance that is generally harmful to their health or their children's health; (i) without their knowing consent, used (or caused their children to use) a substance containing a skin

sensitizer, irritant, or a known or suspected toxin, carcinogen, mutagen, teratogen, environmental pollutant, or otherwise is harmful to the environment and/or their health.

63.    Accordingly, Plaintiff and class members have suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

64.     As the intended, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant has been unjustly enriched through more sales of falsely labeled product and higher profits at the expense of Plaintiff and class members. As a direct and proximate result of its deception, Defendant also unfairly obtained other benefits, including the higher value associated with a "hypoallergenic" brand and the resulting higher stock value, redirecting sales to it and away from its competitors, and increased sales of its Product.

65.    Plaintiff sent a pre-suit notice and demand letter to Defendant on September 30, 2024 via certified mail, return receipt requested, in compliance with all of the CLRA's requirements. In the letter, Plaintiff provided pre-suit notice of the claims Plaintiff asserts under the CLRA as well as her warranty breach claims.

## CLASS ALLEGATIONS

66.    **Class Definition**: Plaintiff brings this action on behalf all people in the following classes and subclasses (collectively referred to as "Class Members"):

Nationwide Class: all people in the United States who purchased the Product for personal or household use during the last four years.

California Subclass: all people in California who purchased the Product for personal or household use during the last four years.

Multi-State Warranty Class: all people who purchased the Product for personal or household use (1) in Alaska, Arkansas, California, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma,

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                                    12

Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, or Wyoming within the applicable statute of limitations; or (2) in Colorado or Massachusetts within the applicable statute of limitations.

Multi-State Consumer Protection Class: all people who purchased the Product for personal or household use (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state of Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; or (4) in the states of Illinois and New York within the applicable statute of limitations.

67.    Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

68.    Specifically excluded from the putative classes are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

69.    **Numerosity**. Class Members are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its agents, or other means.

70.    **Commonality and Predominance**. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  Common legal and factual questions include, but are not limited to:

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                    13

(a)    Whether Defendant misrepresented and/or failed to disclose material facts concerning the Product;

(b)    Whether the omissions and representations on the Product's label and the Product's marketing materials, or any single omission or representation, is false, misleading, and/or deceptive;

(c)    Whether Defendant's conduct in advertising and selling the Product amounted to unlawful, unfair, and/or deceptive business practices;

(d)    Whether Defendant breached an express and/or implied warranty created through the labeling and marketing of its Product;

(e)    Whether Plaintiff and the Class Members are entitled to equitable and/or injunctive relief;

(f)    Whether Plaintiff and the Class Members have sustained damage as a result of Defendant's unlawful conduct;

(g)    The proper measure of damages sustained by Plaintiff and the Class Members; and

(h)    Whether Defendant was unjustly enriched by their unlawful practices.

71.    *Typicality*. The claims of the Plaintiff are typical of the claims of the Class Members in that Plaintiff and the Class Members sustained damages as a result of Defendant's uniform wrongful conduct, as alleged above.

72.    *Adequacy*. Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the classes.  Plaintiff has no interests that are antagonistic to those of the Class Members. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed Class Members.

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                           14

73.    *Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for Class Members; the Class Members are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

74.    Defendant has acted or failed to act on grounds generally applicable to the Class Members, thereby making appropriate final injunctive relief with respect to the Class Members as a whole.

75.    Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Class Members and will likely retain the benefits of its wrongdoing.

## COUNT I
## Violations of California's Unfair Competition Law ("UCL")
## Cal. Bus. & Prof. Code §§ 17200, *et seq.*

76.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

77.    Plaintiff brings this cause of action individually and on behalf of all other class members in the Multi-State Consumer Protection Class and the California Subclass.

78.    California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

79.    Defendant acted with knowledge and intent.

80.    Plaintiff alleges a claim under all three prongs of the UCL.

81.    As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

82.    Defendant's conduct also constitutes "unfair" business acts and practices

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                      15

within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

83.    Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

84.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the other members of the Multi-State Consumer Protection Class and the California Subclass have suffered and will continue to suffer out-of-pocket losses.

85.    Plaintiff and class members in the Multi-State Consumer Protection Class and the California Subclass have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and class members in the Multi-State Consumer Protection Class and the California Subclass are inadequate because they are not equally prompt, certain, or efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                                                        16

86.    Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchase of the Product are determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff and members of the Multi-State Consumer Protection Class and the California Subclass would be left without the parity in purchasing power to which they are entitled.

87.    Plaintiff seeks all relief available under the UCL.

**COUNT II**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code. §§ 17500, et seq.**

88.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

89.    Plaintiff brings this cause of action individually and on behalf of the Multi-State Consumer Protection Class and the California Subclass.

90.    Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 by engaging in the conduct alleged above.

91.    84.    The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

92.    Defendant knew or should have known that its conduct was false and/or misleading.

93.    Defendant knew or should have known that its conduct was false and/or misleading.

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                                17

94.    Plaintiff lacks an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

95.    Plaintiff and members in the Multi-State Consumer Protection Class and the California Subclass have suffered harm as a result of Defendant's violations of the FAL.

96.    Plaintiff seeks all available relief under the FAL.

**COUNT III**
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***

97.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

98.    Plaintiff brings this cause of action individually and on behalf of the Multi-State Consumer Protection Class and the California Subclass.

99.    Defendant is a "person" as defined by California Civil Code § 1761(c).

100.    Plaintiff and the other members in the Multi-State Consumer Protection Class and the California Subclass are "consumers" within the meaning of California Civil Code § 1761(d).

101.    For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

102.    Plaintiff provided pre-suit notice of the claims asserted under the CLRA via certified mail, return receipt requested, in compliance with all of the CLRA's requirements.

103.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

104.    Defendant acted with knowledge and intent.

105.    As alleged above, Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

106.    With respect to the CLRA claim, Plaintiff alleges in the alternative that she lacks an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                                18

107. As a result of Defendant's misconduct, Plaintiff and members of the Multi-State Consumer Protection Class and the California Subclass have suffered monetary harm.

108. Plaintiff seeks all relief available under this cause of action, including damages.

## COUNT IV
### Breach of Implied Warranty

109. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

110. Plaintiff brings this cause of action individually and on behalf of the Nationwide Class and Multi-State Warranty Class against Defendant.

111. Plaintiff asserts this cause of action under California law.

112. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Product, impliedly warranted that the Product was specially formulated to be "hypoallergenic," when that is not true.

113. Defendant breached its warranty implied in the contract for the sale of the Product because it could not pass without objection in the trade under the contract description: the Product was not adequately contained, packaged, and labeled as per Defendant's contract with Plaintiff and members of the Nationwide Class and Multi-State Warranty Class, and the Product does not conform to the implied affirmations of fact made on the marketing and packaging for the Product. U.C.C. §§ 2-313(2)(a), (e), (f). As a result, Plaintiff and members of the Nationwide Class and Multi-State Warranty Class did not receive the goods as impliedly warranted by Defendant to be merchantable.

114. Plaintiff and members of the Nationwide Class and Multi-State Warranty Class purchased the Product in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

115. The Product was defective when it left the exclusive control of Defendant.

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                    19

116. Plaintiff and members of the Nationwide Class and Multi-State Warranty Class did not receive the goods as warranted.

117. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and members of the Nationwide Class and Multi-State Warranty Class have been injured and harmed because: (a) they would not have purchased the Product on the same terms if they knew that the Product was not hypoallergenic; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

118. Plaintiff seeks all available relief under this cause of action.

## COUNT V
## Breach of Express Warranty

119. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

120. Plaintiff brings this cause of action individually and on behalf of the Nationwide Class and Multi-State Warranty Class against Defendant.

121. Plaintiff asserts this cause of action under California law.

122. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the products at issue, expressly warranted that the Product was "hypoallergenic," when that is not true. The warranty was part of the description of the goods and the bargain upon which the goods were offered for sale.

123. By falsely representing that the Product was hypoallergenic, Defendant breached its express warranty.

124. Plaintiff and members of the Nationwide Class and Multi-State Warranty Class did not receive the goods as warranted.

125. As a direct and proximate cause of Defendant's breach of the express warranty, Plaintiff and members of the Nationwide Class and Multi-State Warranty Class have been injured and harmed because: (a) they would not have purchased the Product on the same terms if they knew that the Product was not hypoallergenic; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

126. Plaintiff seeks all available relief under this cause of action.

## COUNT VI
### Unjust Enrichment

127. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

128. Plaintiff brings this cause of action individually and on behalf of all other Class Members against Defendant.

129. Plaintiff asserts this cause of action under the laws of California.

130. To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

131. Plaintiff and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

132. Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

133. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the Product, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Product was not hypoallergenic. This caused injuries to Plaintiff and Class Members because they would not have purchased the Product or would have paid less for it if the true facts concerning the Product had been known.

134. Defendant accepted and retained the benefit in the amount of the gross revenues derived from sales of the Product to Plaintiff and Class Members.

135. Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

136. Plaintiff and Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Product.

137. As a direct and proximate result of Defendant's actions, Plaintiff and the Class Members have suffered in an amount to be proven at trial.

138.    Putative Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

139.    Putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## COUNT VII
### Fraud by Omission / Intentional Misrepresentation

140.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

141.    Plaintiff brings this cause of action individually and on behalf of all other Class Members against Defendant.

142.    Plaintiff asserts this cause of action under the laws of California.

143.    This claim is based on fraudulent omissions concerning the ingredients of the Product and the fact that it is not hypoallergenic as alleged herein. As discussed above, Defendant failed to disclose: (a) the true nature of the Product's ingredients; (b) that the Product contains chemicals commonly known to be allergens, sensitizers, and/or irritants; (c) that the Product is not "hypoallergenic" and not what reasonable consumers would consider "hypoallergenic"; and (d) that the Product contains chemicals that a reasonable consumer would not expect in a product labeled "hypoallergenic."

144.    The false and misleading omissions were made with knowledge of their falsehood. Defendant knew the true nature of the Product and its ingredients. Nonetheless, Defendant continued to sell the Product using the false and misleading omissions alleged herein to unsuspecting consumers.

145.    The false and misleading omissions were made by Defendant, upon which Plaintiff and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and Class Members to purchase the Product.

146.    The fraudulent actions of Defendant caused injury to Plaintiff and Class Members, who are entitled to damages and punitive damages.

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                          22

147.   Plaintiff seeks all relief available under this cause of action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.  For an order certifying the classes and naming Plaintiff as the representative of the classes;

b.  For an order declaring Defendant's conduct violates the statutes referenced herein;

c.  For an order finding in favor of Plaintiff and the classes on all counts asserted herein;

d.  For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiff and the classes their reasonable attorney fees, expenses, and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  June 25, 2025                                   Respectfully submitted,

                                                        */s/ Joel D. Smith*

                                                        **SMITH KRIVOSHEY, PC**
                                                        Joel D. Smith (California Bar No. 244902)
                                                        867 Boylston Street 5th Floor #1520
                                                        Boston, MA 02116
                                                        Telephone: 617-377-4704
                                                        Facsimile: (888) 410-0415
                                                        E-Mail: joel@skclassactions.com

                                                        **SMITH KRIVOSHEY, PC**
                                                        Yeremey O. Krivoshey (California Bar No. 295032)

Brittany S. Scott (California Bar No. 327132)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com
E-Mail: brittany@skclassactions.com

*Attorneys for Plaintiff*

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                24

**CLRA Venue Declaration, Civil Code § 1780(c)**

I, Joel D. Smith, declare as follows:

1.    I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify hereto.

2.    I am the attorney for Plaintiff in the above-captioned action.

3.    I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

4.    The Class Action Complaint has been filed in the proper place for trial of this action.

5.    It is my understanding that Defendant regularly transacts business in this County, and the acts and omissions giving rise to this action occurred in large part in this County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.  Executed on June 25, 2025 in Killingly, CT.

By:   /s/ Joel D. Smith
            Joel D. Smith

FIRST AMENDED CLASS ACTION COMPLAINT;
CASE NO. 2:24-CV-02960-DJC-JDP                                                          25